IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES CLARK STOLTZ, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-1585 |
| | : | |
| KILOLO KIJAKAZI,[1] ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

James Stoltz ("Stoltz" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying a portion of his claim for a period of Disability Insurance Benefits ("DIB").[2] For the reasons that follow, Stoltz's Request for Review will be denied.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Stoltz was born on April 26, 1962.  R. at 60.[3]  He has a limited education and is able to communicate in English.  Id.  He has unskilled past work experience.  Id.  On July 9, 2013,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the Defendant in this action.  No further action need be taken to continue this case pursuant to Section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[2] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment.  See Doc. Nos. 5, 8.

[3] Citations to the administrative record will be indicated by "R." followed by the page number.

Stoltz filed an application for DIB pursuant to Title II of the Social Security Act. Id. at 47. He alleged that he became disabled on November 10, 2010. Id. The application was initially denied on November 27, 2013. Id. Stoltz then filed a written request for a hearing on January 14, 2014. Id. A video hearing regarding the denial of his DIB application was held before an Administrative Law Judge ("ALJ") on April 20, 2016. Id. On July 1, 2016, the ALJ issued an opinion finding that Stoltz was not disabled. Id. at 62. The Appeals Council denied Stoltz's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 31-33. Stoltz then commenced an action in federal court on June 28, 2018. Docket, Stoltz v. Berryhill, No. 18-2736 (E.D. Pa. June 28, 2018).

On January 28, 2020, the undersigned recommended that Stoltz's Request for Review be granted and the case be remanded to the Commissioner and assigned to a new ALJ who had been properly appointed pursuant to the Appointments Clause of the United States Constitution. Report and Recommendation at 1, Stoltz v. Berryhill, No. 18-2736 (E.D. Pa. Jan. 28, 2020). The Report and Recommendation was approved and adopted by Chief Judge Juan R. Sánchez on March 3, 2020. Order, Stoltz v. Berryhill, No. 18-2736 (E.D. Pa. Mar. 3, 2020).

On November 4, 2020, a telephone hearing regarding Stoltz's DIB application was held before an ALJ. R. at 1206. At the hearing, Stoltz amended the alleged onset date to April 25, 2012. Id. On December 3, 2020, the ALJ issued an opinion finding that Stoltz had been disabled since May 28, 2015. Id. at 1223. The Appeals Council did not review the ALJ's decision. See id. at 1203; Pl.'s Br. (Doc. No. 15) at 3. Stoltz then commenced this action in federal court.

## II.   THE ALJ'S DECISION

In her decision, the ALJ found that Stoltz suffered from the following severe impairments: lumbar and cervical degenerative disc disease, alcohol dependence, adjustment

2

disorder/major depressive disorder, and generalized anxiety disorder. R. at 1209. The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment. Id. at 1210. The ALJ determined that, prior to May 28, 2015, Stoltz retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.1567(b) except: occasional postural maneuvers; no climbing ladders/ropes/scaffolds and occasionally climbing ramps/stairs; no exposure to unprotected heights; occasionally reach/lift overhead; alternate stand/sit option every 30-60 minutes with a 10 minute change of position but would be able to remain on task; limited to unskilled, simple, routine tasks, involving only simple decisions and occasional changes in the workplace; and frequent interaction with co-workers, supervisors, and the public.

Id. at 1212. The ALJ found that, beginning on May 28, 2015, Stoltz retained the RFC to perform sedentary work as defined in 20 CFR 416.1567(a) with the same postural and mental limitations as outlined supra. Id. at 1219.

The ALJ determined that, since the amended alleged onset date of April 25, 2012, Stoltz was unable to perform any past relevant work. Id. at 1221. Relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that, before May 28, 2015, there were jobs that existed in significant numbers in the national economy that Stoltz could perform, such as dental floss packer, office helper, and fruit cutter. Id. at 1221-23. Accordingly, the ALJ found that Stoltz was not disabled prior to May 28, 2015 but became disabled on that date. Id. at 1223. The ALJ also determined that Stoltz's substance use disorder was not a contributing factor material to the determination of disability. Id.

### III. STOLTZ'S REQUEST FOR REVIEW

In his Request for Review, Stoltz argues that reversal is required or, in the alternative, that his claim should be remanded with respect to disability prior to May 28, 2015, because the ALJ's decision was not supported by substantial evidence. He contends that the ALJ erred in:

(1) improperly weighing the opinions of his treating physician and the consultative examiner; (2) failing to properly address a Functional Capacity Evaluation ("FCE"); and (3) failing to include in the RFC or hypothetical question to the VE all of his credibly established limitations.

## IV.     SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence." 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). A reviewing court may not undertake a de novo review of the Commissioner's decision to reweigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 423(d)(1); accord id. § 1382c(a)(3)(A). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted); accord id. § 416.920.

## V.    DISCUSSION

### A.    Substantial Evidence Supports the ALJ's Decision Not to Accord Significant Weight to the Opinion of Stoltz's Treating Physician

Stoltz argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not properly evaluate the opinion of treating physician Ahmed Salman, M.D. Pl.'s Br. at 5-12. He contends that, because Dr. Salman was his treating physician, his opinion "should have been assigned additional weight." Id. at 12. Stoltz further alleges that the record supported Dr. Salman's opinion and that the ALJ improperly relied on Dr. Salman's unwillingness to designate Stoltz as permanently disabled in August 2014. Id. at 9-12.

On January 29, 2014, Dr. Salman opined that Stoltz's pain was severe enough to frequently interfere with the attention and concentration needed for simple work tasks. R. at 644. He opined that Stoltz could sit for 20 minutes and stand for 15 minutes at a time and sit and stand or walk about two hours in an eight-hour workday. Id. at 644-45. Dr. Salman further determined that Stoltz could perform a job that permitted shifting positions at will and taking unscheduled breaks every one to two hours during an eight-hour workday. Id. at 645.

The ALJ stated that Dr. Salman's opinion was "not . . . accorded any significant weight." Id. at 1218. The ALJ explained that the assessment was "not supported by [Dr. Salman's] own findings and [was] inconsistent with the clinical and objective findings of record and with other substantial evidence." Id. The ALJ indicated that Dr. Salman's opinion was "carefully weighed pursuant to Social Security 96-2p because he is a treating physician." Id.

Under the applicable regulations and controlling case law,[4] "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)); accord 20 C.F.R. § 416.927(c)(2). A treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If an ALJ does not afford a treating physician's opinion controlling weight, he or she may instead give it "more or less weight depending upon the extent to which supporting explanations are

---

[4] The Social Security Administration amended its regulations regarding how to assess treating source opinions for claims filed on or after March 27, 2017. See 82 F.R. 5844, 5869 (Jan. 18, 2017); see also 20 C.F.R. §§ 404.1520c, 416.920c. Because Stoltz's claims were filed on July 9, 2013, see R. at 47, the new rules do not apply here.

provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Factors to be considered by the ALJ in assigning appropriate weight to a medical opinion include the following: the length of the treating relationship and frequency of examination; the nature and extent of the treating relationship; supportability; consistency; specialization; and other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Stoltz argues that the ALJ "erroneously assigned little weight" to Dr. Salman's opinion, which was "entitled to great weight" as the opinion of a treating physician. Pl.'s Br. at 5. However, under the controlling case law, when a medical opinion is not supported by the claimant's medical records, an ALJ is not required to give it significant weight. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148 (3d Cir. 2007) ("A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."); Newhouse, 753 F.2d at 286 (same). Here, the ALJ determined that Dr. Salman's opinion was unsupported by his own findings and inconsistent with the record, so she was not required to give the opinion significant weight. R. at 1218. The ALJ's decision to accord no significant weight to Dr. Salman's opinion is supported by substantial evidence.

Examinations conducted by Dr. Salman before May 28, 2015 do not support the limitations Dr. Salman outlined regarding Stoltz's ability to stand, walk, and sit. Records from these examinations demonstrate that Stoltz had no edema, no joint tenderness, normal peripheral pulses, normal reflexes and sensation, and no motor deficit except for 4/5 strength in the left leg. Id. at 593, 598, 654-55, 657, 659, 761, 764-66, 770. Stoltz reported during these visits that his pain medication was helping and that he did not want a referral to physical therapy. Id. at 655, 658, 765, 769. In September 2013, Stoltz told Dr. Salman that he was walking "a lot" because he did not have a car, which caused him to have calf tightness at night. Id. at 658. In December

7

2013, Stoltz told Dr. Salman that he used pain medication more frequently because he had recently helped his son move. Id. at 766.

Moreover, other clinical and objective evidence is inconsistent with Dr. Salman's opinion. Prior to May 28, 2015, musculoskeletal exams by other medical providers were generally normal. Id. at 492 (normal musculoskeletal examination), 560 (same but with tenderness noted), 629 (strength at knees and ankles "excellent" while range of motion was slightly limited), 679-80 (normal musculoskeletal examination and normal range of motion). The record indicates that Stoltz's gait was normal and he walked without a cane. Id. at 629. These inconsistencies with Dr. Salman's opinion demonstrate that the ALJ's finding was supported by substantial evidence.

Stoltz argues that "clinical and objective findings" supported Dr. Salman's opinion, "contrary to the ALJ's lay opinion." Pl.'s Br. at 9. He cites to "ample objective evidence" in the record to support Dr. Salman's opinion. Id. at 9-10. Stoltz's assertion that other specific clinical evidence supports Dr. Salman's opinion appears to be a request that the Court reweigh the evidence. This Court, however, is not authorized to reweigh the evidence de novo, Monsour Med. Ctr., 806 F.2d at 1190, but only may determine whether substantial evidence exists to support the ALJ's finding, Torres v. Barnhart, 139 F.App'x 411, 413 (3d Cir. 2005).

Stoltz further maintains that the ALJ erred in her "reliance" on Dr. Salman's August 2014 statement that Stoltz was not permanently disabled. Pl.'s Br. at 10-11. He contends that the statement "will not bear the weight placed on it by the ALJ." Id. at 11.

On July 2, 2014, Stoltz visited Dr. Salman for assistance with his disability benefits application. R. at 760. Dr. Salman noted that, because the record included only one CT scan from 2009 showing mild degenerative disease, he could "not fill [Stoltz's] paperwork for

8

permanent disability." Id. at 761. Dr. Salman asked Stoltz to acquire the records from his surgeon's office and ordered an MRI. Id. On August 6, 2014, Stoltz returned to Dr. Salman for assistance in filling out the application. Id. at 759. Dr. Salman stated, "According to my evaluation and records from St. Joseph's [H]ospital[, I] do not have enough evidence to sign for permanent disability. However, I agree since his surgery he has not been functioning to his best. I'll sign for temporary disability for [three] months and meanwhile get further evaluation." Id. Dr. Salman indicated that he would order an MRI and refer Stoltz to physical therapy. Id. The record includes no further statements from Dr. Salman regarding Stoltz's disability benefits application.

The ALJ referenced Dr. Salman's statement regarding Stoltz's application in her discussion of the persuasiveness of his opinion. Id. at 1218. Contrary to Stoltz's assertion, there is no indication that the ALJ's reference to this fact in the discussion of a medical opinion was unreasonable or erroneous. Dr. Salman's statements in July and August 2014 were part of the treatment records, other parts of which the ALJ referenced in her decision to demonstrate that Dr. Salman's opinion was not supported by his own findings. Id. Stoltz has not demonstrated that the reference to a specific statement by Dr. Salman in any way negates that the ALJ's finding is supported by substantial evidence.

### B. The ALJ Did Not Err in Finding that Stoltz Could Perform Light Work

Stoltz maintains that reversal is required because the ALJ erred in evaluating the opinion of consultative examiner Leon H. Venier, M.D. Pl.'s Br. at 12-15. He contends that the ALJ's failure to explicitly reject Dr. Venier's opinion regarding Stoltz's standing and walking limitations contradicted the ALJ's finding that Stoltz could perform light work with a sit/stand option. Id. at 13-14.

On November 13, 2013, Dr. Venier opined that Stoltz could sit for eight hours, stand for two hours, and walk for one hour without interruption. R. at 638. He determined that, in an eight-hour workday, Stoltz could sit for eight hours, stand for three hours, and walk for two hours. Id. Dr. Venier indicated that Stoltz could push and pull occasionally, never climb ladders or scaffolds, and never kneel, crouch, or crawl. Id. at 639-40. He further found that Stoltz could never tolerate unprotected heights, temperature extremes, pulmonary irritants, or vibrations. Id. at 641.

The ALJ accorded partial weight to Dr. Venier's opinion. Id. at 1217. The ALJ found limiting Stoltz to light work with a sit/stand option was supported by the record as a whole and the examination findings. Id. The ALJ determined that neither the examination nor other evidentiary findings supported the other limitations on pushing and pulling, kneeling, crouching, and crawling, and environment. Id. She noted that the unsupported limitations "appear[ed] to be based primarily on [Stoltz's] self[-]report." Id. However, the ALJ determined that, in light of evidence of degenerative shoulder disease in 2016, Stoltz was limited to no more than occasional reaching or overhead lifting. Id. She further stated that his admitted daily activities were compatible with a restriction to light work. Id.

Stoltz argues that, because the ALJ did not reject Dr. Venier's opinion that he was limited to three hours of standing and two hours of walking in an eight-hour workday—for a total of five hours—her finding that Stoltz could perform light work is unsupported. Pl.'s Br. at 13. He points to Social Security Ruling 83-10, which states that light work requires standing or walking for a total of approximately *six* hours in an eight-hour workday. Id. at 13-14; "Titles II and XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2," SSR 83-10, Soc. Sec. Rep. Serv. 24, 1983 WL 31251, at *6 (1983) (emphasis added) [hereinafter

"SSR 83-10"].  Stoltz argues that, had the ALJ understood that the limitations she credited precluded light work under SSR 83-10, he would have been limited to sedentary work and found disabled prior to May 28, 2015.  Pl.'s Br. at 14-15.

Stoltz's argument is premised on the logical leap that, in not explicitly rejecting a limitation opined by Dr. Venier, the ALJ credited it.  Id. at 13-14.  However, an ALJ's failure to explicitly reject limitations opined by a medical source does not mean the ALJ has found those limitations to be credible.  An ALJ can implicitly reject these limitations by accepting conflicting limitations of another physician or can address them in the RFC without explicit discussion.  See Berkheimer v. Comm'r of Soc. Sec., No. 20-49, 2021 WL 3038762, at *5 (W.D. Pa. July 19, 2021) (an ALJ's failure to explicitly account for several limitations opined by a persuasive medical source in the RFC was not an error because the ALJ included them in the overall conclusion regarding the claimant's limitations); McGinnis v. Soc. Sec. Admin., No. 13-6484, 2019 WL 2640654, at *6 (E.D. Pa. June 26, 2019) (an ALJ implicitly rejected a lifting and carrying limitation by accepting another physician's light work limitation instead).

Here, the ALJ implicitly rejected Dr. Venier's restriction to three hours of standing and two hours of walking in an eight-hour workday by determining that Stoltz could perform light work.  R. at 1212.  The ALJ's rejection was explained—although not explicitly in terms of Dr. Venier's limitation—in finding the opinion of State agency physician Michael J. Brown, D.O., persuasive.  Id.  Dr. Brown opined that Stoltz could stand or walk for about six hours in an eight-hour workday.  Id. at 113.  The ALJ stated that Dr. Brown's opinion "reflect[ed] a thorough and well-balanced review of the contemporaneous record and is generally compatible with . . . MRI and x-ray findings, physical examinations and imaging."  Id. at 1217.  However, because of Stoltz's reports of difficulty standing and walking, as well as the finding of 4/5 lower left leg

11

strength, the ALJ further restricted the limitations Dr. Brown proffered to light work allowing for a sit/stand option every 30 to 60 minutes. Id. By accepting and further limiting Dr. Brown's opinion regarding Stoltz's ability to stand and walk during an eight-hour workday, the ALJ implicitly rejected Dr. Venier's limitations on this ability.

The ALJ's finding that Stoltz could perform light work with a sit/stand option is supported by substantial evidence. As Stoltz states, SSR 83-10 indicates that "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, at *6. Social Security's regulations regarding light work provide that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Light work also requires frequently lifting no more than 20 pounds at a time. Id. Stoltz's history of generally normal musculoskeletal examinations, generally normal diagnostic imaging, and successful management of pain using medication support the ALJ's finding that Stoltz could stand and walk for the amount of time required by a light work limitation, especially given the ALJ's further imposition of a sit/stand option. R. at 492, 560, 593, 598, 629, 654-55, 658-59, 679, 758-59, 761, 764-66, 770. The record demonstrates that Stoltz performed activities consistent with this limitation, including walking instead of using a car, squirrel hunting and mushroom scavenging with his grandson, and helping his son move. Id. at 658, 766, 792, 892. Thus, the ALJ's finding that Stoltz could perform light work with a sit/stand option before May 28, 2015 is supported by substantial evidence.

      C.     **The ALJ Did Not Err in Failing to Address the FCE**

Stoltz argues that the ALJ erred in failing to adequately address the FCE or explain the weight she assigned to it. Pl.'s Br. at 15-17. He contends that the ALJ was required to consider

and discuss the weight of the FCE because his application was filed before March 27, 2017.  Id. at 15.  Stoltz alleges that reversal is required because the "error was potentially dispositive."  Id. at 17.

On February 16, 2012, Stephen Uetz completed an FCE for Stoltz as part of a worker's compensation claim regarding an injury on November 10, 2010.  R. at 1040-45.  Uetz concluded that Stoltz could work for five hours of an eight-hour workday and could sit for three hours in 20-minute durations, stand for two hours in 10-minute durations, and walk four hours of occasional, moderate distances.  Id. at 1041.

The ALJ stated that she "did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) including FCE opinions."  Id. at 1219.  Stoltz contends that the ALJ should have addressed the FCE under 20 C.F.R. §§ 404.1527(f)(1)-(2) because he filed his application for benefits before March 27, 2017.  Pl.'s Br. at 15.  These regulations provide guidance to ALJs about considering opinions "from medical sources who are not acceptable medical sources and from nonmedical sources" and articulating the weight given to these opinions. 20 C.F.R. §§ 404.1527(f)(1)-(2).

Stoltz is correct that the regulation cited by the ALJ applies to applications filed after March 27, 2017.  See id. § 404.1520b.  Regardless of this error, the ALJ's lack of discussion of the FCE does not demand reversal in this matter.  Under the regulation dictating Stoltz's application for benefits, the "Articulation" guidance states that an ALJ "should explain the weight given to opinions from these sources . . . when such opinions may have an effect on the outcome of the case."  Id. § 404.1527(f)(2).  Here, there is no indication—besides Stoltz's broad assertion—that the FCE may have had an effect on the outcome of the case.  The FCE took place before Stoltz's alleged onset date of April 25, 2012 with a non-medical provider who did

13

not see Stoltz at any other time. R. at 47, 1040. The ALJ thoroughly discussed Stoltz's medical history since April 25, 2012, which included weighing numerous medical opinions, reviewing diagnostic tests and surgery records, and identifying the change in Stoltz's limitations on May 28, 2015. Id. at 1212-20.

Stoltz cites to Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000), to support his argument that the ALJ was "required to explain the weight she assigned this evidence, if any." Pl.'s Br. at 17. However, Burnett requires that an ALJ may not reject *pertinent or probative* evidence without explanation, not all evidence a claimant presents. 220 F.3d at 121 (emphasis added); see Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008). The FCE in this matter is neither pertinent nor probative, given it was a singular interaction before the alleged onset date. Stoltz has not demonstrated how discussing it may have affected the outcome of his case, especially in light of the large swath of relevant, more timely evidence the ALJ reviewed.

### D. Substantial Evidence Supports the ALJ's Inclusion of Stoltz's Limitations in the RFC Assessment and Question to the VE

Finally, Stoltz contends that the ALJ's RFC was not supported by substantial evidence because she failed to incorporate Stoltz's credibly established limitations in the RFC and question to the VE. Pl.'s Br. at 17-20. He argues that the ALJ omitted limitations assessed by Drs. Salman and Venier, which would have "restrict[ed] him to no more than sedentary work" and rendered him disabled as of April 2012. Id. at 18-20.

An individual's RFC refers to the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a). The assessment must be based upon all the relevant evidence, including medical records, medical source opinions, and the individual's subjective allegations and descriptions of his or her own limitations. Id. § 404.1545(a)(3). In assessing a

14

claimant's RFC, an ALJ must consider all the claimant's medically determinable impairments, including impairments that are not severe. Id. § 404.1545; Rutherford, 399 F.3d at 554. Likewise, when questioning a VE, an ALJ's hypothetical question must also accurately convey all "credibly established limitations." Rutherford, 399 F.3d at 544. "Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response." Id. However, it is the ALJ's responsibility to determine a claimant's RFC. 20 C.F.R. § 404.1546. "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); see also Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) (ALJ could extrapolate based on the evidence of record because every fact incorporated in an RFC does not need to have been found by a medical expert).

Here, the ALJ's RFC assessment relied on the VE's response to a hypothetical question that included the limitations of light exertion level work. R. at 1261. As discussed supra in Section V.A and V.B, substantial evidence supported the ALJ's determination that some of the limitations opined by Drs. Salman and Venier were of no weight. Thus, it was not error for the ALJ to reject these limitations in her RFC assessment and to rely on the VE's testimony regarding the hypothetical question. The RFC and hypothetical question sufficiently captured all of Stoltz's credibly established limitations and were supported by substantial evidence.

## VI. CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's Request for Review will be denied and dismissed.

An appropriate order follows.

Dated: February 23, 2022

                                          BY THE COURT:

                                          */s/ Marilyn Heffley*
                                          MARILYN HEFFLEY
                                          UNITED STATES MAGISTRATE JUDGE